THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABDIWALI MUSSE,

                Plaintiff,

    v.

WILLIAM HAYES, *et al.*,

                Defendants.

CASE NO. C18-1736-JCC

ORDER

Pursuant to the parties' stipulation and proposed order (Dkt. No. 14), the Court ENTERS the following order regarding the discovery of electronically stored information ("ESI"):

**A. General Principles**

    1. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

    2. The proportionality standard set forth in Federal Rule of Civil Procedure 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

//

**B. ESI Disclosures**

Within 30 days after the Rule 26(f) conference, or at a later time if agreed to by the parties, each party shall disclose:

1. <u>Custodians</u>. The five custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under his/her control. Custodians shall be as follows: (a) William Hayes, Director, Department of Adult and Juvenile Detention (at the time of the incident giving rise to this lawsuit); (b) Hikari Tamura, Deputy Director, Department of Adult and Juvenile Detention; (c) Gordon Karlsson, Commander, King County Correctional Facility; (d) Todd Clark, Major, King County Correctional Facility; (e) Runette Mitchell, Correction Program Administrator, Department of Adult and Juvenile Detention (at the time of the incident giving rise to this lawsuit)

2. <u>Non-Custodial Data Sources</u>. A list of non-custodial data sources (*e.g.*, shared drives, servers, etc.), if any, likely to contain discoverable ESI.

3. <u>Third-Party Data Sources</u>. A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email and/or mobile device providers, "cloud" storage, etc.) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. <u>Inaccessible Data</u>. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system, or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Federal Rule of Civil Procedure 26(b)(2)(B).

**C. Preservation of ESI**

The parties acknowledge that they have a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2. All parties shall supplement their disclosures in accordance with Rule 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (C)(3) or (D)(1)-(2) below).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

    a. Deleted, slack, fragmented, or other data only accessible by forensics.

    b. Random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

    d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

    e. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

    f. Server, system, or network logs.

    g. Data remaining from systems no longer in use that is unintelligible on the systems in use.

    h. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**D. Privilege**

1. With respect to attorney-client privileged or work-product information generated after the filing of Plaintiff's tort claim for damages, the parties are not required to include any such information in privilege logs.

2. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Federal Rule of Civil Procedure 26(b)(3)(A) and (B).

3. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection, if: (i) such information appears on its face to have been inadvertently produced, or (ii) the producing party provides notice within 15 days of discovery by the producing party of the inadvertent production.

4. <u>Privilege Log Based on Metadata</u>. The parties agree that privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure.

**E. ESI Discovery Procedures**

1. <u>On-Site Inspection of Electronic Media</u>. Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2. <u>Search Methodology</u>. The parties shall timely attempt to reach agreement on appropriate search terms, or an appropriate computer- or technology-aided methodology, before any such effort is undertaken. The parties shall continue to cooperate in revising the

appropriateness of the search terms or computer- or technology-aided methodology. In the absence of agreement on appropriate search terms, or an appropriate computer- or technology-aided methodology, the following procedures shall apply:

    a. A producing party shall disclose the search terms or queries, if any, and methodology that it proposes to use to locate ESI likely to contain discoverable information. The parties shall meet and confer to attempt to reach an agreement on the producing party's search terms and/or other methodology.

    b. If search terms or queries are used to locate ESI likely to contain discoverable information, a requesting party is entitled to no more than five additional terms or queries to be used in connection with further electronic searches absent a showing of good cause or agreement of the parties. The five additional terms or queries, if any, must be provided by the requesting party within 14 days of receipt of the producing party's production.

    c. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. Absent a showing of good cause, each search term or query returning more than 250 megabytes of data is presumed to be overbroad, excluding Microsoft PowerPoint files, image and audio files, and similarly large file types.

    d. The producing party shall search both non-custodial data sources and ESI maintained by the custodians identified above.

    3. <u>Format</u>. The parties shall attempt to reach agreement on appropriate production format before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of production formats based on technology.

    a. The parties agree that ESI will be produced to the requesting party with searchable text, in a format to be decided between the parties. Acceptable formats include, but are not limited to, native and searchable PDF. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files,

should be produced in native format.

        b.      Each document image file shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the page of the document in question, followed by its file extension).

        c.      If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

    4.    <u>Hard Copies</u>. If the parties elect to produce hard copy documents in an electronic format, the production of hard-copy documents shall include a cross-reference file that indicates document breaks and sets forth the Custodian or Source associated with each produced document. Hard-copy documents shall be scanned using Optical Character Recognition technology and searchable ASCII text files shall be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file shall be named with a unique Bates Number (*e.g.*, the Unique Bates Number of the first page of the corresponding production version of the document followed by its file extension). Hard copy documents will be produced as PDF with searchable text as indicated above.

    5.    <u>De-duplication</u>. The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party.

    6.    <u>Metadata Fields</u>. If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced: document type; custodian and duplicate custodians; author/from; recipient/to, cc, and bcc; title/subject; file name and size; original file path; date and time created, sent, modified, and/or received; and hash value. Although it is presumed generally that the above list of metadata fields will be provided, the list of metadata fields is intended to be flexible and may be changed by agreement of the parties, particularly in

light of advances and changes in technology, vendor, and business practices.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

ORDER
C18-1736-JCC
PAGE - 7

DATED this 29th day of March 2019 at Seattle, Washington.

| PARTY 1 | PARTY 2 |
|---|---|
| DANIEL T. SATTERBERG<br>King County Prosecuting Attorney<br>*s/ Kimberly Y. Frederick*<br>Kimberly Y. Frederick, WSBA # 37857<br>Senior Deputy Prosecuting Attorney<br>Attorney for Defendants King County and William Hayes<br>500 Fourth Avenue, 9th floor<br>Seattle, Washington 98104<br>Tel: (206) 296-8820<br>Email: Kimberly.Frederick@kingcounty.gov | *s/ Jay H. Krulewitch*<br>Jay H. Krulewitch, WSBA # 17612<br>Jay H. Krulewitch, Attorney at Law<br>Attorney for Plaintiff Abdiwali Musse<br>2611 N.E. 113th St.<br>Seattle, WA 98125<br>Tel: (206) 233-0828<br>Email: jay@krulewitchlaw.com |

1       DATED this 2nd day of April 2019.

[signature]

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C18-1736-JCC
PAGE - 9