1

Honorable Judge John C. Coughenour

2

3

4

5

6                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON

7

ABDIWALI MUSSE,                          )

8                                        )
                            Plaintiffs,  )   No. 2:18-cv-01736-JCC
9                                        )
                                         )
           vs.                           )
10                                       )   DEFENDANT KING COUNTY'S
                                         )   MOTION FOR SUMMARY
11   WILLIAM HAYES, Director of King County )  JUDGMENT
     Department of Adult and Juvenile Detention, )
     in his individual and official capacity, J. DOES )
12   ONE THROUGH FIVE, in their individual )
     and official capacity, and KING COUNTY, a )   Noted for January 22, 2021
13   county of the State of Washington    )
                                         )
14                                       )
                            Defendants.  )

15

16                  **I.      RELIEF REQUESTED**

17

18           Plaintiff Abdiwali Musse alleges he suffered serious injuries when he was assaulted

     by another inmate in the King County Correctional Facility (KCCF) on November 1, 2015.

19
     Musse is suing former Department of Adult and Juvenile Detention (DAJD) Director
20
     William Hayes and King County (collectively "the defendants") for "failure to protect"
21
     under 42 U.S.C. § 1983, negligence, and breach of contract related to the Hammer et al v.
22
     King County settlement agreement (the "Hammer Agreement"). However, there is no
23
     evidence of any constitutional violation under § 1983, negligence or breach of contract by

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 1

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1  the defendants. Therefore, the defendants respectfully request that this Court grant its

2  motion for summary judgment and dismiss plaintiff Abdiwali Musse's case in its entirety

3  with prejudice pursuant to Fed. R. Civ. P. 56.

4                    **II.        STATEMENT OF FACTS[1]**

5        **A. Plaintiff Abdiwali Musse arrest and booking into KCCF.**

6        On October 31, 2015, at 2121 hours Federal Protective Service Officer Robert Cantu

7  observed plaintiff Abdiwali Musse driving with erratic lane travel on northbound

8  Highway 509 in the city of Burien Washington and initiated a traffic stop. Musse Dep Ex.

9  5, p. 6. When Officer Cantu spoke with Musse he smelled alcohol coming from his person

10  and Musse admitted having to drinks. *Id.* Officer Cantu requested Washington State

11  Patrol respond to the scene and at 2146 hours WSP Trooper Van Auken arrived and

12  administered field sobriety tests and a portable breath test. *Id* at p. 8. Trooper Van Auken

13  arrested Musse for DUI based on the results of the field sobriety tests and a portable

14  breath test result of .167. *Id*. Musse was transported to the WSP Roanoke office for DUI

15  processing where he submitted to breath test with BAC results of .166 and .176. *Id.* at p.

16  9. Following the breath test, Trooper Van Auken transported Musse to KCCF to be

   booked on DUI.

17        When Musse arrived at the KCCF he was placed in a room where Trooper Van

18  Auken removed his handcuffs and completed some paperwork, before KCCF staff took

19  over. Musse Dep. 71:18-24. KCCF staff had Musse complete some forms, change out of

20  his clothes into a KCCF uniform and then he spoke with a nurse at the jail. Musse Dep

   72:15-18. Musse was then taken to a holding cell with six to eight other inmates and

21  periodically KCCF staff would call him out of the cell to finish the booking process. Musse

22  Dep 72:19-20, 73:15-21, 74:13-24. Musse did not have any negative interactions with any

23  of the inmates in the holding cell. Musse Dep 76:4-6. After the intake and booking process

---

[1] Deposition Excerpts and Exhibits are attached to the Declaration of Jerry Taylor.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 2

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

was completed Musse the other inmates in his holding cell were taken by elevator to the ninth floor. *Id.* at 77:13-78:8. Musse was placed in the 9-South Upper B tank at 3 am. Musse Dep 80:21-25; Heberling Dep 54:22-55:6.

### B.  Carl Anderson's arrest, intake and booking into KCCF.

October 31, 2015, at 8:06 pm, Carl Anderson punched a man named Kevin Dares in the face on Virginia Street in Seattle. Clark Dep Ex. 1, p. 7. After hitting Dares, Anderson yelled something like "I am going to kick your ass." *Id.* Dares was able to defend himself and get Anderson onto the ground until police arrived. *Id.* Seattle Police Officer Richard Traverso responded to the scene, interviewed witnesses and took Anderson into custody for assault. Clark Dep Ex. 1, p. 6. Anderson was transported to KCCF for booking on a misdemeanor assault charge. Clark Dep Ex. 1, pgs. 3, 6-7.

#### 1.  First Deferral Screening and Decline

When Anderson arrived at KCCF he was screened by Correction Officer Cortney Echternach using the DAJD deferral screening form. Echternach Dep 23:7-14. Officer Echternach noted on the deferral screening form that Anderson had bleeding and sores on his person and no past or present suicidal ideation within the last 12 months. Echternach Dep 24:16-18, 25:2-5. Officer Echternach noted "low blood pressure" and "meth" in the DAJD staff comment section of the deferral screening form. Echternach Dep 25:6-10. Officer Echternach does not recall why she noted this information but this information is generally provided by the inmates. Echternach Dep 25:11-22.  Jail Health Services (JHS) Registered Nurse (RN) Mike Velasquez evaluated Anderson and declined him during the initial booking. Echternach Dep 26:2-6.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 3

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

2. <u>Second Deferral Screening and Housing Recommendation</u>

It is undisputed that Anderson was taken to Harborview Medical Center as a result of his initial decline. Anderson returned to KCCF just before 2 a.m. on November 1, 2015. Anderson received another deferral screening, this time by Officer Sarah Mathews (Davis).[2] Davis Dep 7:22-25, 8:15-18. Officer Davis did not note any observed medical problems regarding Anderson on this deferral screening form and called JHS RN Behauden Omer to ITR at 1:59 a.m. Davis Dep 8:23-25, 10:5-10. RN Omer responded to ITR, reviewed Anderson's HMC records that accompanied him back to KCCF and assessed Anderson utilizing the JHS Receiving Screening Form (RSF). Omer Dep 28:17-22. RN Omer confirmed that Anderson had been treated for his injuries at HMC that had resulted in Anderson's initial decline and noted medications that were recommended for him. Omer Dep 39:19-40:7. Anderson was not declined for any psychiatric issue. *Id.*

The RSF or Enhanced RSF as it is labeled on the form, is an 8x14 sheet of paper which contains a set of questions the JHS RN will go through with the inmate from top to bottom. Omer Dep 28:24-25. The JHS RN will record the inmate's response on the form and then enter this information into a computer. Omer Dep 29:2-3. All inmates booked into KCCF undergo RSF assessment to screen for medical and mental health history. Omer Dep 49:18-19. The information gathered from the RSF assessment will be used by JHS to make a housing recommendation to DAJD. *Id.*

---

[2] Officer Sarah Matthews goes by the last name Davis, since 2017, and was referred to as Officer Davis during her deposition. So, to limit any confusion she will be referred to as Officer Davis throughout this motion.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 4

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

RN Omer went through the entire RSF with Anderson section by section and documented the encounter making note of information that would relevant to his care while in KCCF. Omer Dep 82:7-12. RN Omer found Anderson's behavior  was appropriate for general population and made that housing recommendation. Omer Dep 84:25-85:1, 74:10-13.

**C.  Anderson assaults Musse while they are both housed on the 9th floor of KCCF in tank 9-South Upper B (9SUB).[3]**

On November 1, 2015, Correction Officer Robert Heberling was assigned as the deck officer for the 9th Floor South wing. Heberling Dep 20:7-12. As the designated deck officer for 9-South, Officer Heberling was responsible for the safety and security of the inmates he received from ITR housing to his wing. Heberling Dep 20:13-20. Musse and Anderson were moved from ITR to the receiving floor located on the 9th floor (9-South) of KCCF at 3 am on November 1, 2015 and placed into tank 9-South Upper B. Heberling Dep 54:22-55:6.

At 3:18 am Officer Heberling heard a loud voice and went in the direction of the noise to investigate more and observed Anderson yelling at Musse. Heberling Dep 67:4-13. Before Officer Heberling could give any directives to Anderson, he observed Anderson move toward Musse and hit him. Heberling Dep 68:9-11. After the first strike

---

[3] On November 1, 2015, during the intake and booking of Musse and Anderson into KCCF, the DAJD mainframe system was offline so that DAJD data could be transferred to a newer technology. This data transfer, known as the "Mainframe Rehost Project" does not raise any relevant issue of material fact for the Court to consider on summary judgment because it did not impact any DAJD decision regarding Anderson's initial housing placement.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 5

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

Officer Heberling saw Musse and Anderson both throw punches. Heberling Dep 92:5-6.

Officer Heberling radioed to central control that two inmates were fighting. *Id.* Heberling

Dep 68:11-12. Officer Heberling yelled at Anderson and Musse in an attempt to get them

to stop fighting. Heberling Dep 69:13-15.

The first two officers to respond were Officer Autumn Heerspink and Officer Jody

Mendez at approximately 3:19 am. Dep Ex. 44, pg. 3.  Heberling went to the control panel

as Officer Heerspink yelled directives to both Anderson and Musse to stop fighting.

Heberling Dep 69:16-70:1. Officer Heerspink was able to get Anderson and Musse to stop

fighting and ordered them onto the ground. Heberling Dep 70:4-7. Acting Sergeant

Gordon Gaynor ("A/Sgt. Gaynor") arrived on scene, ordered the opening of the doors to

9-South Upper B and officers entered the tank and placed handcuffs on Anderson and

Musse. Heberling Dep 70:8-9. A/Sgt. Gaynor wanted to get Anderson, who was

identified as the aggressor out of the tank first. Gaynor Dep 100:14-16, 101:1-3. A/Sgt.

Gaynor asked Anderson if he wanted to see a nurse and Anderson declined. Gaynor Dep

101:6-9. Anderson was then transported by two officers to the 11th floor, cell Lower C9.

Gaynor Dep 101-10-12; 23-25. Anderson was compliant with the whole process. Gaynor

Dep 101:12-13.

A/Sgt. Gaynor then directed officers to remove Musse's handcuffs because he

believed Musse was the victim in this incident. Gaynor Dep 102:1-10. A/Sgt. Gaynor

observed blood coming from Musse's mouth. Gaynor Dep 102:10-11. Musse  took a seat

on a bunk and A/Sgt. Gaynor called for a medical status II. Gaynor Dep 102:15-20. JHS

nurses on duty responded and assessed Musse's injuries. *Id.* The JHS nurses determined

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 6

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1   that Musse needed further evaluation for cuts to his lip and cheek at HMC and and could

2   be transported by car. Gaynor Dep 103:4-6, 10-14, 135:7-14. Musse was transported to

3   HMC for treatment. Heberling Dep 76:1-3.

4
                                III.      ISSUES PRESENTED
5

6       1.   Should the Court dismiss plaintiff's 42 U.S.C. §1983 claim against Director
             William Hayes where there is no evidence that any act, omission, or
7            ratification of any wrongful conduct led to the deprivation of plaintiff's
             constitutional rights?
8

9       2.   Should the Court dismiss plaintiff's 42 U.S.C. §1983 claim against King
             County where there is no evidence that King County adopted a policy,
10           custom or practice that resulted in the deprivation of plaintiff's constitutional
             rights?
11

12      3.   Should the Court dismiss plaintiff's state negligence claims against the
             defendants where there is no evidence that the defendants breached any duty
13           owed to plaintiff?

14      4.   Should the Court dismiss plaintiff's claim of negligent implementation of the
             Hammer Agreement against the defendants where it is undisputed that  On
15           November 1, 2015, inmate Carl Anderson was not designated as DHRC
             inmate?
16

17      5.   Should the Court dismiss plaintiff's breach of contract claim because plaintiff
             cannot establish that he is a third-party beneficiary of Hammer Agreement
18           and even if plaintiff was a third-party beneficiary, there is no evidence the
             defendants breached the Hammer Agreement?

19      6.   Should the Court dismiss all of plaintiff's claims against the unidentified John
             Doe defendants Nos. 1-5 where plaintiff has had ample time to identify any
20           additional defendants through extensive discovery and has failed to do so?

21                           IV.      EVIDENCE RELIED UPON

22           The defendants rely upon the pleadings on file herein, as well as the Declaration

23   of Gregg Curtis and the Declaration of Jerry Taylor, with attachments.

                                V.      AUTHORITY

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 7

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

## A.   Standard for Summary Judgment

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact remaining for trial, and the moving party is entitled to judgment as a matter of law.  *Alexander v. City and County of San Francisco*, 29 F.3d 1355 (9th Cir. 1994); Fed. R. Civ. Pro. 56(a).  The Rule does not require the moving party to produce evidence showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 91 L.Ed.2d 265 (1986).  Rather, the moving party need only point out that the non-moving party lacks evidence to support his case.  *Id.*

In response to the motion, the non-moving party may not merely rely on his pleadings but must "come forward with 'specific facts showing that there is a <u>genuine issue for trial</u>.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R. Civ. P. 56(e) (emphasis added)).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing *First Nat'l Bank of Arizona v. City Services Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

## B.   Plaintiff's 42 U.S.C. § 1983 failure to protect claims are factually and legally insufficient and should be dismissed.

Plaintiff alleges that the defendants are liable pursuant to 42 U.S.C. § 1983 for deprivation of his constitutional rights under the Fourteenth Amendment for failing to protect him from harm. Dkt. 2, Ex. A, p. 8, line 15 – p. 9, line 2. Plaintiff's failure to protect claims fail for the reasons outlined below.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 8

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

**1.   There is no evidence that any acts or omissions by Director William Hayes deprived plaintiff of a constitutional right.**

A pre-trial detainee may sue a prison official for injuries suffered while in custody under the Fourteenth Amendment's Due Process Clause. *See Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In order to establish a failure to protect claim under the Fourteenth Amendment a plaintiff must show:

> (1) the defendant made an intentional decision with respect to the conditions under which plaintiff was confined; 2) those conditions put plaintiff at substantial risk of suffering serious harm; 3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved-making the consequences of the defendant's conduct obvious; and 4) by not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. County of Los Angeles,* 833 F.3d 1060, 1070-71 (2016). Regarding the third element, "the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* at 1071.   A pretrial detainee asserting  a due process claim for failure to protect claim must prove more than negligence but something less than subjective intent-something akin to reckless disregard. *Id.*

A supervisory official will not be liable for the actions of a subordinate on any theory of vicarious liability for claims pursuant to 42 U.S.C. § 1983. *Hansen v. Black,* 885 F.2d 642, 645-46 (9th Cir. 1989). A supervisory official may only be liable if there exists either (1) his personal involvement in the constitutional deprivation; or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Id.* The necessary causal connection can be established if the supervisor sets in

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 9

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1    motion a "series of acts by others or by knowingly refusing to terminate a series of acts

2    by others which the supervisor knows or reasonably should know would cause others to

3    inflict the constitutional injury." *Starr v. Baca,* 652 F.3d 1202, 1207-08 (9th Cir. 2011). "A

4    supervisor can be liable in his individual capacity for his own culpable action or inaction

5    in the training, supervision, or control of his subordinates; for his acquiescence in the

6    constitutional deprivation; or for conduct that showed a reckless or callous indifference

7    to the rights of others." *Watkins v. City of Oakland,* 145 F.3d 1087, 1093 (9th Cir. 1998).

8        In the present case plaintiff alleges Director Hayes is liable for failing to train and

9    monitor compliance of DAJD officers as it relates to the pre-classification procedures

10   required under the Hammer Agreement. Dkt. 2, p. 10 lines 17—28.  The specific section

11   of the Hammer Agreement at issue states:

12

13       3.1.2   Pre-Classification Identification of Inmates with Records of
                 Violent, Assaultive or Ongoing Aggressive Behavior in
14               KCCF.
             King Count will maintain a procedure to identify and integrate
15           within records systems inmates with documented violent,
             assaultive or ongoing aggressive behavior in KCCF. As part of
16           implementation of this procedure, King County will develop a
             "Disciplinary History Risk Code" to identify inmates with
17           documented histories of such behavior. The Disciplinary History
             Risk Code will be read by a corrections officer during the intake
18           process for each incoming inmate. When a positive notation is read
             in the inmate's Disciplinary History Risk Code, the corrections
19           officer will contact a designated classification specialist for review
             and selection of an appropriate initial housing assignment
20           consistent with the security requirements of the inmate in question.

21   Dkt. 2, Ex. A p.29-30.

22

23       When inmates are brought to KCCF there are several functions that must be

     completed in the intake and booking process before an inmate is moved to a receiving

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 10

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

floor, including deferral screening by a DAJD officer and a jail health screening. Clark Dep 24:22-26:17. All male inmates who are booked into the KCCF will initially be housed on the receiving floor, 9-South, unless the inmate: 1) is a returning ultra security inmate, 2) is returning DHRC inmate, 3) has a medical condition or 4) has psychiatric issue. Clark Dep 48:12-15.

An ultra-security level is reserved for extreme safety and security issues, often involving assault on staff, escape and occasionally death penalty cases. Curtis Dep 41:9-13. A returning ultra-security inmate is automatically sent to restrictive housing. Clark Dep 48:21-22. For returning DHRC inmates the DAJD booking officer will place that inmate in a separate holding cell away from other inmates and notify DAJD classification staff to meet with the inmate to conduct the primary interview to determine where they should be housed. Curtis Dep 23:12-21, 28:13-19.

It is undisputed that DAJD had implemented a DHRC code into its jail management system to identify inmates with violent, assaultive or ongoing aggressive behavior within a DAJD facility. When a DHRC classification code is applied to an inmate's record it attaches retroactively to every booking for that inmate in the DAJD records system. Declaration of Gregg Curtis at ¶7. The DAJD record for an inmate with a DHRC classification code will show when that particular status was added. *Id.*

Anderson had a total of eight bookings into the KCCF or Maleng Regional Justice Center (MRJC), including his booking on November 1, 2015: May 7, 2003, August 19, 2003, January 5, 2004, July 7, 2004, October 2, 2004, January 27, 2005 and February 2, 2013. Declaration of Gregg Curtis ¶11. Anderson's DAJD classification records during that

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 11

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

period of time contained Keep Separate From (KSF) entries and infractions. A KSF record alerts staff to keep certain inmates from having direct contact with each other and retroactively attaches to every booking record for the inmates involved. *Id.* at ¶ 8. Anderson had KSF record entry on September 11, 2003 for arguing with another inmate and another KSF record entry on March 30, 2005 for hitting another inmate during an argument over a tv remote. *Id.* at ¶13. Neither of Anderson's KSF records were related to Musse. *Id.*

Inmates housed at the KCCF or MRJC may receive infractions if they fail to follow rules or behave appropriately. *Id.* at ¶9. Anderson had of a total of eight infractions between November 22, 2003 and April 12, 2013. Anderson had only one infraction for fighting which was related to the March 30, 2015, incident where he hit another inmate during a dispute over the tv remote. *Id.* at ¶12. None of Anderson's infractions considered individually or collectively would require a DHRC classification code designation for Anderson. *Id.* At the time of his booking on November 1, 2015, Anderson did not have a DHRC classification code designation. *Id.* at ¶19.[4] Additionally, there was nothing in Anderson's classification records that would have required him to be placed in some type of segregated or isolated housing pre-classification. *Id.* at ¶20.

It is undisputed that Director Hayes did not have any  involvement with the intake booking or housing decisions regarding Musse and Anderson on November 1, 2015.

---

[4] Anderson did receive a DHRC classification code designation on September 30, 2016, for his behavior during subsequent incarcerations at KCCF or MRJC and due to the assault of Musse. Curtis Dec ¶19.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 12

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

Thus, Musse cannot satisfy the elements established by *Castro* for a pretrial detainee Fourteenth Amendment failure to protect claim. Further, under supervisor liability theory, there is no evidence of any acts, omissions or ratification of wrongful conduct by Director Hayes which created a substantial risk of serious harm to plaintiff and led to his injuries. Thus, Musse cannot establish a 42 U.S.C. § 1983 cause of action against Director Hayes in his supervisory role.

### 2.   Director Hayes is entitled to Qualified Immunity.

Qualified immunity shields government actors from liability under 42 U.S.C. § 1983 if "there conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In determining whether a government employee is entitled to qualified immunity the court must determine: 1) whether the government employee's conduct violated a constitutional right; and 2) whether the right was clearly established at the time of the incident. *Pearson v. Callahan,* 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). A court may consider the two prongs of the qualified immunity analysis in any order. *See Chism v. Washington,* 661 F.3d 380, 386 (9th Cir. 2011).

The defendants do not dispute that Musse had a clearly established right. The Supreme Court has made clear that prison officials have a duty to protect a prisoner from violence at the hands of other prisoners. *Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Additionally, the due process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 13

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

prisoner." *City of Revere v. Mass General Hosptial,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983).

The next question in the qualified immunity analysis is whether Director Hayes violated Musse's clearly established right. *See Pearson,* 555 U.S. at 232. There is no evidence that Director Hayes was involved in the intake, booking or housing decisions related to either Musse or Anderson. Also, there is no evidence of any culpable conduct by Director Haye in his supervisory role, i.e., failure to adequately train staff. Thus, Director Hayes is entitled to qualified immunity.

### 3. Plaintiff's Municipal Liability claims are factually and legally insufficient to survive Summary Judgment.

It is well established that municipalities cannot be held liable under a 42 U.S.C. § 1983 claim on a respondeat superior theory. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A governmental entity may be liable under a 42 U.S.C. § 1983 claim "when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. The municipality must be the moving force behind the constitutional violation. *Id.*

In order to establish a 42 U.S.C. § 1983 municipal liability a plaintiff must satisfy at least one of the following conditions:

> First, a local government may be held liable when implementation of its official policies or established customs inflicts constitutional injury. Second, plaintiff can prevail on a § 1983 claim against the County by identifying acts or omission, such as pervasive failure to train its employees, when such omissions amount to the local government's own official policy. Finally, the County may be held

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 14

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

liable under §1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.

*Smith v. Pierce County,* 218 F. Supp.3d 1220, 1228 (W.D. Wash 2016). Municipal liability for an improper custom cannot be "predicated on isolated or sporadic incidents, it must be founded on practices of sufficient duration, frequency and consistency that the conduct transforms into the traditional method of carrying out policy." *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir. 1984) *See also, Meehan v. Los Angeles County,* 856 F.2d 102 (9th Cir. 1988) (two incidents not sufficient to establish custom); *Davis v. Ellensburg,* 869 F.2d 1230 (9th Cir. 1989) (manner of one arrest insufficient to establish policy). The ratification theory of municipal liability generally requires more than acquiescence. *Smith v. Pierce County,* 218 F.Supp.3d at 1229. "When a county continues to turn a blind eye to severe violations of inmates' constitutional rights-despite having received notice of such violations-a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference." *Id.* (quoting *Henry v. County of Shasta,* 132 F.3d 512, 518 (9th Cir. 1997)).

First, there is no evidence that the implementation of a formal King County policy, i.e., the Hammer Agreement, deprived plaintiff of his constitutional rights. Second, plaintiff cannot establish that King County adopted a practice or custom of inadequate training as it relates to the Hammer Agreement that is so pervasive it transforms into a formal County policy. In fact, plaintiff cannot establish any failure of King County to comply the pre-classification requirements of the Hammer Agreement. Finally, there is

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 15

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

no evidence that Director Hayes, as head of DAJD, committed a constitutional tort or ratified the unconstitutional decision or action of a subordinate. Thus, plaintiff's municipal liability claims must be dismissed.

### C.   Plaintiff's State Negligence claims fail because he cannot establish that the defendants breached any duty of care owed to him.

The elements of a negligence cause of action are as follows: duty to the plaintiff, breach of the duty, and injury to plaintiff proximately caused by the breach. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999) (citing *Degel v. Majestic Mobile Manor, Inc.,* 129 Wn.2d 43, 48, 914 P.2d 728 (1996)). Although breach of duty and proximate cause are generally questions of fact, they may be determined as a matter of law when reasonable minds could not differ. *Id.* (citing *Sherman v. State*, 129 Wn.2d 164, 183, 905 P.2d 355 (1995)). Plaintiff's negligence claims fail for the reasons outlined below.

### 1.   Plaintiff cannot overcome presumption that DAJD officials performed their duty.

Washington courts have long recognized that jailers have a duty to ensure the health, welfare and safety of inmates. *Gregoire v. City of Oak Harbor,* 170 Wn.2d 628, 635, 244 P.3d 924 (2010). "The duty owed is a positive duty arising out of the special relationship that results when a custodian has complete control over a prisoner deprived of liberty." *Shea v. City of Spokane,* 17 Wn. App. 236, 242, 562 P.2d 264 (1977).

Prison officials have a duty to use reasonable care to prevent assaults by one inmate against another. *Winston v. Sate/Department of Corrections,* 130 Wn. App. 61, 64, 121 P.3d 1201 (2005). However, in order for liability to attach, the prison officials must know "that such injury will be inflicted, or have good reason to anticipate such, and then there

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 16

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

must be a showing of negligence on the part of these officials in failing to prevent the injury." *Id.* There is a presumption that prison officials performed their duty. *Riggs v. German,* 81 Wash. 128, 131, 142 P.479 (1914). However, if evidence tending to rebut that presumption is established, then the question is one of fact for the jury. *Eberhart v. Murphy,* 113 Wash. 449, 453, 194 P. 415 (1920).

In *Winston,* the plaintiff was an inmate at the Airway Heights Correction Center where he was assaulted by another inmate and sustained an orbital blowout fracture and permanent visual impairment. *Winston,* 130 Wn. App. At 63. The plaintiff sued the State for negligence in its failure to protect him and for violation of his civil rights. *Id.* The State moved for summary judgment, which the trial court granted. *Id.* at 64. In affirming the trial court's decision, the *Winston* court found that plaintiff failed to show that prison officials had any reason to believe he would be attacked.

Musse alleges that Director Hayes was negligent for housing Anderson in the same unit with him. Musse also alleges that King County is vicariously liable for the actions of Director Hayes. However, like *Winston,* there is no evidence that DAJD officials had any reason to believe that Anderson would attack Musse. Anderson did not have a KSF code related to Musse. Curtis Dec ¶13. Also, there is no evidence that Anderson was combative, hostile, aggressive or threatening towards other inmates during the intake and booking process. Anderson did not have an egregious disciplinary history with DAJD and was not designated with a DHRC classification code. Musse cannot overcome the presumption that DAJD officials performed their duty. Thus, the negligence claim against the defendants should be dismissed with prejudice.

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 17

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1
2

**2. Plaintiff cannot establish that his assault at the hands of Anderson was the result of the defendants' negligent implementation of the Hammer Agreement.**

3
4
5
6
7
8
9
10
11

Plaintiff alleges that defendants breach their duty to reasonably and diligently implement the Hammer Agreement by failing to properly determine Anderson's disciplinary history risk code and house him accordingly. Dkt. 2, Ex. A, p. 14 line 1-14. It is undisputed that pursuant to the Hammer Agreement, King County agreed to maintain procedures to flag inmates with documented histories of "violent, assaultive or ongoing aggressive behaviors in KCCF" and provide "an appropriate initial housing assignment consistent with the security requirements of the inmate in question." It is also undisputed that King County had implemented such procedures prior to November 1, 2015.

12
13
14
15
16
17
18
19

Prior to November 1, 2015, Anderson was not designated as a DHRC inmate, meaning he did not have a history of violent, assaultive, or ongoing aggressive behavior in KCCF or the MRJC. There is no evidence that the defendants failed to carry out their obligations regarding pre-classification of inmates pursuant to the Hammer Agreement. Further, there is no evidence that Anderson fell into any of the remaining categories that would have resulted in an alternative housing placement i.e., returning ultra-security status, medical or psychiatric issues. Thus, plaintiff's negligent implementation claim should be dismissed with prejudice.

20
21

**D. Plaintiff's Breach of Contract claim fails as a Matter of Law.**

22
23

To prevail on a breach of contract claim, plaintiff must establish 1) a duty was imposed by the contract; 2) breach of duty; and 3) damages proximately caused by the

DEFENDANT KING COUNTY'S MOTION FOR SUMMARY JUDGMENT - 18

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1   breach. *NW Indep. Forest Mfrs. V. Dep't of Labor & Industries,* 78 Wn. App. 707, 712, 899

2   P.2d 6 (1995). For the reasons outlined below, plaintiff's breach of contract claim fails.

3   **1. Plaintiff is not a third-party beneficiary to the Hammer Agreement.**

4   A third-party is a beneficiary of a contract when "performance under the contract

5   would necessarily and directly benefit that party." *Postlewait Construction Inc., v. Great*

6   *American Insurance Cos.,* 106 Wn.2d 96, 720 P.2d 805, 807 (1986). In order to create a third-

7   party beneficiary contract, the parties must "intend the promisor assume a direct

8   obligation to the intended beneficiary at the time they enter into the contract." *Burke &*

9   *Thomas, Inc., v. International Org. of Masters, Mates & Pilots,* 92 Wn.2d 762, 600 P.2d 1282,

10   1285 (1979).

11

12   The parties to the Hammer Agreement were the ACLU of Washington, Calvin

13   Hammer, Edward Boekel, Melton Atkins and Wilborn Kelley Stevens (the "Plaintiffs")

14   and King County (the Defendant). Dkt. 2, Ex. A p. 20. The Hammer Agreement sets forth

15   specific procedures and operational requirements to be implemented at KCCF. Although

16   there are a few references to "inmates" in the agreement, there is no evidence that the

17   parties intended   King County to assume direct obligations to plaintiff under this

18   agreement at the time it was entered into. Indirect reference to a third-party does not

19   create a third-party beneficiary contract. *Tooley v. Stevenson Co-Ply, Inc.,* 106 Wn.2d 626,

20   724 P.2d 368, 371 (1986). Thus, plaintiff is not a third-party beneficiary and is not entitled

21   to any relief under the Hammer Agreement.

22

23

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 19

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

**2. Assuming *arguendo* that plaintiff is a third-party beneficiary of the Hammer Settlement Agreement he cannot establish defendants breached their duty.**

Plaintiff alleges that he is a third-party beneficiary of the Hammer Agreement and the defendants breached their duty under said agreement as it relates to determining Anderson's disciplinary history risk code and initial housing assignment. However, as stated above, it is undisputed that Anderson was not designated as a DHRC inmate on November 1, 2015. Additionally, there is no evidence that the initial housing placement for Anderson was improper. Thus, plaintiff's third-party beneficiary claim should be dismissed.

**E. The Court should dismiss plaintiff's claims against John-Doe Defendants Nos. 1-5.**

It is a well-established rule that use of "John Doe" to identify defendants is not favored. *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980). However, where the identity of alleged defendants is unknown prior to the filing of a complaint, the plaintiff should be permitted through the discovery process to "identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id.*

Plaintiff filed his complaint in state court on October 15, 2018. Dkt. 1, p. 1.The matter was removed to federal court on December 3, 2018. *Id.* Plaintiff has served the defendants with requests for interrogatories, requests for production and requests for admissions which the defendants responded to. Plaintiff has also conducted over 20 depositions of King County witnesses. The discovery cut-off in this case was November

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

30, 2020. Plaintiff has not filed a motion for leave to file an amended complaint to name any of the "John Doe" defendants. The discovery has not revealed the identities of the John Doe defendants and it is unlikely they even exist. Given the late stage in the litigation process and the fact that extensive discovery has failed to identify the John Doe defendants, plaintiff's claims as it relates to the unidentified defendants should be dismissed.

## VI.      CONCLUSION

For the foregoing reasons, the defendants respectfully request that this Court grant its motion for summary judgment and dismiss plaintiff's complaint in its entirety with prejudice.

DATED this 30th day of December, 2020.


DANIEL T. SATTERBERG
King County Prosecuting Attorney

By: /s/ JERRY L. TAYLOR_____
JERRY L. TAYLOR, WSBA #40739
Senior Deputy Prosecuting Attorney
500 Fourth Ave., 9th Floor
Seattle, WA.  98104
Telephone: (206) 296-8820
Fax: (206) 296-8819
E-Mail: jerry.taylor@kingcounty.gov
Attorney for Defendant William Hayes
and King County

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 21

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

## CERTIFICATE OF FILING AND E-SERVICE

I hereby certify that on December 30, 2020, I electronically filed the foregoing

document with the Clerk of the Court using the electronic filing system and by

agreement of the parties a copy was served electronically on the following:

Jay H. Krulewitch
2611 NE 113th St., Suite 300
Seattle, WA 98125
(206)233-0828
jay@krulewitchlaw.com


I declare under penalty of perjury under the laws of the United States and the

State of Washington that the foregoing is true and correct.

DATED this 30th day of December, 2020.

_____

ANGELA LINDSEY
Legal Secretary
King County Prosecuting Attorney's Office

DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT - 22

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819