THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABDIWALI MUSSE, | CASE NO. C18-1736-JCC |
| Plaintiff, | ORDER |
| v. | |
| WILLIAM HAYES, *et al.*, | |
| Defendants. | |

This matter comes before the Court on the King County Defendants' motion for summary judgment (Dkt. No. 43). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

I.   BACKGROUND

Early in the morning on November 1, 2015, while in bed, Mr. Musse was attacked by Carl Alan Anderson. (Dkt. Nos. 43 at 5–6, 53 at 9–10.) At the time, both men were being held at the King County Correctional Facility ("KCCF") in unit 9SUB, an open dormitory-style area that normally houses pre-trial detainees. (*Id.*) Mr. Musse had been arrested earlier that night for driving under the influence. (Dkt. No. 43 at 2; 53 at 9.) This was the first time he had been in jail. (Dkt. No. 53 at 9.) Mr. Anderson, on the other hand, had been booked into KCCF eight times. (Dkt. No. 43 at 11.)

On this occasion, Mr. Anderson was held at KCCF after being arrested for punching a man in the face without apparent warning or provocation a few hours prior on the streets of Seattle. (Dkt. Nos. 43 at 3, 53 at 3.) KCCF initially declined to take custody of Mr. Anderson after his arrest, based upon a Jail Health Services Registered Nurse's medical evaluation. (Dkt. Nos. 43 at 3–4; 53 at 3.) Mr. Anderson was instead transferred to Harborview Medical Center for medical treatment before being returned to KCCF early the morning of November 1st. (*Id.*) According to Dr. Matthew Beecroft, the attending physician at the Harborview ER who treated Mr. Anderson, he was suffering from a "meth-induced psychosis." (Dkt. No. 56-2 at 5–7.) After a few hours, Dr. Beecroft discharged him to police custody. (*Id.*) Dr. Beecroft would later explain that he was comfortable releasing Mr. Anderson "back into police custody . . . , [but] would not have released Mr. Anderson . . . if he had simply come into the ER on his own with these same symptoms" because there was a risk he "would . . . be a danger to himself or others." (*Id.*)

When Mr. Anderson returned to KCCF, he was again evaluated by a Jail Health Services Registered Nurse and placed into the general population 9SUB unit, which also housed Mr. Musse. (Dkt. Nos. 43 at 5, 53 at 7–9.) Nobody at the Jail flagged Mr. Anderson as someone requiring separate medical or psychiatric housing. (*Id.*) According to the Supervisor's Incident Report, the attack occurred shortly thereafter, at 3:18 a.m., which Plaintiff alleges was less than twenty minutes after Mr. Anderson was placed in the 9SUB unit. (Dkt. Nos. 53 at 9–10, 55-4 at 34–35.) Plaintiff claims that, as a result of the attack, he suffered "fractures to his left orbital socket, severe dental injuries, and a traumatic brain injury that will impact him for the rest of his life." (Dkt. No. 53 at 1.)

Mr. Musse filed a complaint in King County Superior Court. (Dkt. No. 1-2). He named as defendants William Hayes, the Director of the King County Department of Adult and Juvenile Detention ("DAJD"); King County; and five John Doe defendants. (*Id.*) He asserted causes of action for "failure to protect" pursuant to 42 U.S.C. § 1983, general negligence, and negligence

and breach of contract claims based on alleged violations of the settlement agreement in *Hammer, et al. v. King County*, Case No. C89-0521-R (W.D. Wash 1998). (*Id.* at 9–13.)

Defendants King County and William Hayes ("King County Defendants") removed the action to this Court and now move for summary judgment on all claims. (Dkt. Nos. 1, 43.) They argue Mr. Musse presents no evidence to support his claims and, therefore, there are no genuine disputes of material fact. (Dkt. No. 43 at 7.) They seek dismissal of all claims against them and of the claims against the John Doe Defendants, given Mr. Musse's failure to identify specific individuals following discovery. (*Id.*)

In their reply, the King County Defendants also argue that Mr. Musse's claims should be dismissed because the complaint does not adequately plead a § 1983 claim or a negligence claim predicated on inadequate screening of Mr. Anderson, given his behavior the evening of the attack and his criminal and psychological history. (Dkt. No. 57 at 2 – 3.) Instead, according to the King County Defendants, the complaint relies solely on Mr. Anderson's Disciplinary History Risk Code ("DHRC"), as required by the *Hammer* agreement, for which neither the evidence nor Mr. Musse's briefing would now support a § 1983 or tort-based negligence claim. (*Id.*)

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the

nonmoving party's case." *Id.* at 325. Once the moving party meets its burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must "show[] that the materials cited do not establish the absence . . . of a genuine dispute" or "cit[e] to particular parts of . . . the record" that show there is a genuine dispute. Fed. R. Civ. P. 56(c). When analyzing whether there is a genuine dispute of material fact, the "court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

### III.  DISCUSSION

#### A.  Scope of the Complaint

As a threshold matter, the Court finds the complaint satisfies Federal Rule of Civil procedure 8(a)(2) in that it provides Defendants fair notice of Plaintiff's § 1983 and tort-based negligence claims and the facts upon which they are based, *irrespective* of Mr. Anderson's DHRC. (*See* Dkt. No 1-2 at 5–8.)

#### B.  Section 1983 Claims

The King County Defendants move for summary judgment on Mr. Musse's § 1983 claims because, they argue, Mr. Musse presents no evidence of acts or omissions by Director Hayes that resulted in a deprivation of Mr. Musse's constitutional rights, and even if Mr. Musse had presented such evidence, Director Hayes is entitled to qualified immunity. (Dkt. No. 43 at 9–16.) The King County Defendants also argue that the § 1983 claims are insufficient to establish King County's municipal liability under *Monell*. (Dkt. No. 43 at 9–16.) The Court agrees with the King County Defendants' arguments with respect to Director Hayes but disagrees with their argument with respect to King County.

##### 1.  Director Hayes' Acts or Omissions

Mr. Musse alleges that the Director Hayes had a duty to protect him from Mr. Anderson

while Mr. Musse was subject to pre-trial detention and that by failing to do so, Director Hayes violated Mr. Musse's Fourteenth Amendment's Due Process rights. (Dkt. No. 1-2 at 5–10.) In order to establish a "failure to protect" Fourteenth Amendment claim, a plaintiff must show:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved— making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016). A supervisor is not liable for the actions of a subordinate pursuant to 42 U.S.C. § 1983, unless the supervisor is either *personally involved* in the constitutional violation or there is a sufficient casual connection between the supervisor's wrongful conduct and the constitutional violation. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

Mr. Musse argues that Director Hayes is liable for Mr. Anderson's allegedly inadequate intake screening because he authorized the Jail Mainframe Rehost Project, which resulted in critical information being unavailable to KCCF personnel during Mr. Anderson's intake screening process. (*See* Dkt. No. 53 at 19–20.) But Mr. Musse provides no evidence that Director Hayes was personally involved in the Rehost Project. In fact, Mr. Musse admits that "Director Hayes . . . delegated the task of developing the jail policy for this project to Major Clark." (Dkt. No. 53 at 19.) Mr. Musse summarily argues that it was Director Hayes' "duty as the top official for the jail . . . to make sure such procedures were in place" to adequately screen pre-trial detainees while the computer system was down. (Dkt. No. 53 at 19.) But this argument is foreclosed by binding precedent, which does not provide vicarious liability for § 1983 claims. *See, e.g.*, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

Given Mr. Musse's failure to present evidence demonstrating that Director Hayes was personally involved with, or had a causal connection to, the technology breakdown allegedly resulting in Mr. Anderson's attack of Mr. Musse, the Court must GRANT summary judgment to

Director Hayes on Mr. Musse's § 1983 claims.

### 2. Municipal Liability Under *Monell*

Mr. Musse also alleges that King County is liable for KCCF's "failure to protect" based on its municipal liability. (Dkt. No. 1-2 at 10.) In order to establish municipal liability, Mr. Musse must identify a policy or custom responsible for his injury. *See Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978). The evidence presented by Mr. Musse easily raises a genuine dispute about these issues. He identifies a variety of policies and customs, including a policy to classify detainees without regard to their history, a policy precluding screening nurses from sharing medical records with booking officers, and a custom of assigning new inmates to the general population even during times when computerized custody records to allow for a comprehensive screening were unavailable. (Dkt. No. 53 at 15–16.) Accordingly, summary judgment is DENIED as to Mr. Musse's § 1983 claims against King County.

### C. Negligence Claim

The King County Defendants next move for summary judgment on Mr. Musse's negligence claim, relying on the presumption that KCCF officials would have performed their duty to use reasonable care when booking and housing Mr. Anderson. (Dkt. No. 43 at 16). But Mr. Musse can overcome that presumption by putting forth some evidence demonstrating that prison officials had "good reason to anticipate" that Mr. Anderson might injure another inmate and evidence demonstrating "negligence on the part of" prison officials in failing to act upon it. *Winston v. Sate/Department of Corrections*, 121 P.3d 1201, 1202 (Wash. 2005). Mr. Musse easily meets this burden, thereby establishing material disputed facts on this issue.

The evidence Mr. Musse puts forward includes Mr. Anderson's patient records from Harborview, indicating that he was delusional, which was included in Mr. Anderson's case file available during his intake screening; the probable cause statement for Mr. Anderson's arrest that evening, indicating that he attacked someone on the streets of Seattle without provocation; his initial screening report, prepared before being initially declined by KCCF just a few hours prior

to the attack on Mr. Musse, which indicated that Mr. Anderson was under the influence of "meth;" testimony from a fellow inmate, who indicated that before the attack Mr. Anderson was "pacing around, saying things that made no sense . . . he was talking to himself saying things like we were talking about him and that he wanted to hurt someone and the Demons were going to make him do it." (Dkt. No. 56-1 at 3, 10, 15; 56-2 at 5–7, 56-5 at 19–20.) This is sufficient to establish material disputed facts as to whether prison officials should have been aware of the risks Mr. Anderson posed yet negligently failed to act upon this information.

Accordingly, summary judgment is DENIED as to Mr. Musse's negligence claim.

### D. *Hammer* Settlement Agreement Claims

Mr. Musse's complaint makes frequent references to, and includes a copy of, the consent decree reached in *Hammer, et al. v. King County, et al.,* Case No. C89-0521-R (W.D. Wash 1998). (*See, e.g.*, Dkt. No. 1-2 at 4, 5, 7, 8, 18–41.) The consent decree requires, among other things, that King County develop and maintain a procedure to track inmates with violent histories within KCCF to ensure that those individuals receive appropriate initial housing assignments based on the risks they present. (*See* Dkt. No. 1-2 at 27–28.) Mr. Musse's complaint brings two claims predicated on KCCF's alleged failure to abide by the Agreement: negligent implementation of the Agreement and breach of contract. (Dkt. No. 1-2 at 11–13.)

The King County Defendants move for summary judgment on both claims, arguing that Mr. Musse presents no evidence to support his allegation that they breached a duty of care established by the agreement or the agreement itself. (Dkt. No. 43 at 16–20.) The Court agrees. In fact, not only does Mr. Musse not present any evidence addressing the King County Defendants' compliance with the Agreement, Mr. Musse does not even *argue* that the King County Defendants failed to comply with the Agreement. (*See generally* Dkt. No. 53.) Therefore, the Court is left with no choice but to conclude that Mr. Musse fails to establish a genuine dispute of material fact with respect to the King County Defendants' compliance with the *Hammer* agreement. Accordingly, summary judgment is GRANTED as to Mr. Musse's claims

for negligent implementation of the *Hammer* Agreement and breach of contract with respect to the *Hammer* Agreement.

### E. John Doe Defendants

Finally, the King County Defendants move for summary judgment on all claims against the John Doe Defendants, arguing that it is well past the appropriate time to allow the case to continue with unnamed defendants. (Dkt. No. 43 at 20–21.) The Court agrees. While a plaintiff is allowed an opportunity to identify unknown defendants during the discovery period, *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), that period lapsed almost six months ago, (Dkt. No. 32), and Mr. Musse still has not identified these defendants or even argued in his response that the claims against these defendants should survive. (*See generally* Dkt. No. 53.) Accordingly, summary judgment is GRANTED as to Mr. Musse's claims against the John Doe defendants.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 43) is GRANTED in part and DENIED in part. Mr. Musse's § 1983 claim against King County survives, as does his negligence claim against the King County Defendants. Mr. Musse's remaining claims are DISMISSED with prejudice.

DATED this 16th day of April 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE