The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

ABDIWALI MUSSE,

Plaintiff,

v.

KING COUNTY,

Defendants.

No. 2:18-cv-01736-JCC

PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

NOTE FOR: SEPTEMBER 10, 2021

**Oral Argument Requested**

Plaintiff Abdiwali Musse, through counsel, moves for an order imposing appropriate sanctions on King County for the destruction of the video recordings of the events that give rise to this lawsuit. The Court has discretion in fashioning sanctions for the destruction of evidence. However, because of the importance of the destroyed evidence and the egregiousness of the conduct that led to its destruction, plaintiff submits that an appropriate sanction in this case is a partial directed verdict instructing the jury that King County is 100% liable for plaintiff's injuries on his negligence claim, and that those injuries were the proximate result of deliberate indifference to his right to safety while in custody.

**FACTS**

This Court summarized the factual background of this case in its Order on Defendants' Motion for Summary Judgment as follows:

> Early in the morning on November 1, 2015, while in bed, Mr. Musse was attacked by Carl Alan Anderson. At the time, both men were being held at the King County Correctional Facility ("KCCF") in unit 9SUB, an open dormitory-style area that normally houses pre-trial detainees. Mr. Musse had been arrested earlier that night for driving under the influence. This was the first time he had been in jail. Mr. Anderson, on the other hand, had been booked into KCCF eight times.



MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

> On this occasion, Mr. Anderson was held at KCCF after being arrested for punching a man in the face without apparent warning or provocation a few hours prior on the streets of Seattle. KCCF initially declined to take custody of Mr. Anderson after his arrest, based upon a Jail Health Services Registered Nurse's medical evaluation. Mr. Anderson was instead transferred to Harborview Medical Center for medical treatment before being returned to KCCF early the morning of November 1st. According to Dr. Matthew Beecroft, the attending physician at the Harborview ER who treated Mr. Anderson, he was suffering from a "meth-induced psychosis." After a few hours, Dr. Beecroft discharged him to police custody. Dr. Beecroft would later explain that he was comfortable releasing Mr. Anderson "back into police custody ..., [but] would not have released Mr. Anderson ... if he had simply come into the ER on his own with these same symptoms" because there was a risk he "would ... be a danger to himself or others."
>
> When Mr. Anderson returned to KCCF, he was again evaluated by a Jail Health Services Registered Nurse and placed into the general population 9SUB unit, which also housed Mr. Musse. Nobody at the Jail flagged Mr. Anderson as someone requiring separate medical or psychiatric housing. According to the Supervisor's Incident Report, the attack occurred shortly thereafter, at 3:18 a.m., which Plaintiff alleges was less than twenty minutes after Mr. Anderson was placed in the 9SUB unit. Plaintiff claims that, as a result of the attack, he suffered "fractures to his left orbital socket, severe dental injuries, and a traumatic brain injury that will impact him for the rest of his life."

Dkt. 62 at 1-2 (record citations omitted).

Mr. Musse claims in this lawsuit that King County is liable under both state and federal law for the injuries he suffered in this attack. The Court has found sufficient evidence to support those claims and they are set for jury trial starting December 6, 2021. Dkt. 62, 66. The individual claims against Jail Director William Hayes have been dismissed by stipulation (Dkt. 69), so King County is the only remaining party defendant.

Discovery has revealed that King County had bit destroyed a video of the assault on Mr. Musse and the bizarre behavior by Mr. Anderson that preceded it. Paul Allyn, whose company installed video cameras in the jail, testified that there were two cameras in the cell where the attack occurred, both of which were functioning and would have recorded the assault and the events preceding it. See Allyn Dep. (Ex. 7[1]) at 17:16-20:14, 18:12-20:14, 22:8- 3.

[1] The Exhibits referenced herein ("Ex.") are attached to the supporting Declaration of Timothy Ford.



MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

Discovery also revealed that the recordings of these videos were destroyed—presumably 60 days after the incident, long before this case was filed. See Interrogatory Answer No. 2 (Ex. 3), page 4. They were destroyed although the responsible King County Jail officials were aware of the assault and knew that Mr. Musse had been taken to Harborview for treatment of his injuries. See Stark Report (Ex. 2) at 00928-932. They were destroyed although on November 4, 2015, just three days after the incident, Shift Commander Jerry Hardy approved the initial report describing the incident and Major Todd Clark referred it to the jail's criminal investigations unit. *Id*. at 00930. They were erased although King County Jail's own Policy Manual requires that "[w]hen any of the following occurs: incident which requires a preliminary investigation; … injury to staff and/or inmate; criminal behavior; and/or alleged misconduct, the Shift Captain will export any videotape of the incident to the archived video file." KC Jail Policy 4-01-020 (Ex. 4) at 2. Although the jail officials now say they don't specifically recall whether the cameras were installed in unit 9SUB at the time, Mr. Allyn has confirmed they were; and the fact there were video cameras throughout the facility was well known to all: Jail Director Hayes testified there are cameras "all over the facility," "probably at least a couple hundred …." Hayes Dep. (Ex. 11) at 39:21-40:11.

Shift Captain Jerry Hardy admitted in deposition that the jail policy was mandatory and made preservation of the videos his responsibility. Hardy Dep. (Ex. 10) at 59:18. Other County witnesses said the same thing. See, e.g., Clark Dep. (Ex. 8) at 237:1-11; Hayes Dep. (Ex. 11) at 42:3. They also testified that others in the jail hierarchy could have preserved the video as well; and Officer Ken Stark, to whom the criminal investigation was assigned, admitted he could have asked them to do so. Stark Dep. (Ex. 12) at 34:11, 36:16-



MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

21. Preserving the records required only the click of a mouse button on the jail's computer. See Egashira Dep. (Ex. 9) at 39:8-11. But no one did that, and the video record was destroyed without being saved or viewed by anyone.[2]

This video record of the incident would have been the best evidence of the events that give rise to this lawsuit. It likely showed Mr. Anderson's attack on Mr. Musse, from two different angles. Allyn Dep. (Ex. 7) at 27:4-11. It also would have shown how Mr. Anderson was acting in the few minutes he was in the cell before he attacked Mr. Musse. The only witness who has described this says he was "pacing around, saying things that made no sense…. saying things like we were talking about him and that he wanted to hurt someone and the Demons were going to make him do it." See Winston Dec. (Ex. 6) at 1. That fact—along with the fact that the last person who saw Anderson before he was admitted to jail, Dr. Beecroft, also recognized he was dangerously psychotic—is central to plaintiffs' claims that the jail had notice of, and was indifferent to, the danger Anderson posed to other inmates. See Order or SJ (Dkt. 62) at 7.

The destruction of the video has thus irreparably damaged Mr. Musse's ability to present his case on liability to the jury. It has also undermined his ability to convey to the jury the magnitude of his damages, which he could have best done by allowing it to actually witness the violence and terror that he experienced at Mr. Anderson's hands.

Because of this, plaintiff has filed this motion for sanctions commensurate with the magnitude of the damage done by King County's destruction of this evidence.

[2] Plaintiff believes this failure was part of a grossly inadequate investigation of this incident. No one at the jail attempted to interview any of the inmates in cell 9SUB who witnessed the incident, or to take any photographs of Mr. Musse's injuries (or the injuries to Mr. Anderson's fists), or to collect any of Mr. Musse's bloody clothes. See Stark Dep. (Ex. 12) at 31:7-32:16; 33:3-34:16; 37:12-39:1; 39:2-44:15.



MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

**ARGUMENT**

This Court has recently had occasion to review and apply the law governing sanctions for spoliation of evidence:

> District courts possess inherent authority to impose sanctions against a party in response to the party's spoliation of relevant evidence. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). Spoliation is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009). The party alleging spoliation must prove:
>
>> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind;' and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.
>
> *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012) (collecting cases).
>
> "[T]he 'duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation.'" *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) (quoting *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 800 (N.D. Tex. 2011)). "Stated differently, the duty to preserve is triggered not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." Id. (internal quotations omitted); accord *Henderson v. Tyrell*, 910 P.2d 522, 534 n.7 (Wash. Ct. App. 1996) (quoting *Fire Ins. Exch. v. Zenith Radio Corp.*, 747 P.2d 911, 913–14 (Nev. 1987)) ("[E]ven where an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.").
>
> In the Ninth Circuit, a court may impose sanctions on a party for spoliating evidence if the court finds that the party acted with "conscious disregard" of its discovery obligations; generally, a finding of bad faith is not required. See *Apple Inc.*, 888 F. Supp. 2d at 998 (citing *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 n.2 (9th Cir. 1992)); *Hamilton v. Signature Flight Support Corp.*, 2005 WL 3481423, slip op. at 7 (N.D. Cal. 2005) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108) ("[The culpable state of mind] factor is satisfied by showing that the evidence was destroyed 'knowingly, even if without intent to [breach a duty to preserve it], or negligently.' ").



MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

*Ski Lifts, Inc. v. Schaeffer Manufactur.*, 2020 WL 1492676 (USDCt. WD Wa. 3/27/2020).

Additionally, FRCP 37(e) provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

This Court has held that the inherent power to sanction acts of spoliation that prejudices an opponent is additional to, and separate from, the discretion conferred by this Rule. *Neely v. Boeing Co.*, 2019 WL 1777680, at *2 (W.D. Wash. Apr. 23, 2019). .

Under either test, all the elements of a sanctionable spoliation are present here. The only question is what sanction should be imposed. Because of the flagrancy of the County's failure to preserve this critical evidence, and the scope of the prejudice to the plaintiff's case it causes, we submit the sanction should be the most severe the law allows.

**1. King County had sole possession of the video evidence and recklessly destroyed it in violation of its own jail policies.**

Discovery has shown that King County's jail had video recordings made on the night in question which included video of the assault on Wali Musse and the moments preceding it. King County's own policies recognized a duty to preserve that video evidence on three separate grounds: it had been determined to be an "incident which



MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

requires a preliminary investigation;" it involved "injury to … [an] inmate;" and it involved "criminal behavior … and[] alleged misconduct." See KC Jail Policy 4-01-020 (Ex. 4) at 2; Supervisors Report (Ex. 1) at 821.

Moreover, the jail marked the incident for a criminal investigation, so its investigators had a constitutional duty to preserve material evidence in its possession. *See Miller v. Vasquez*, 868 F.2d 1116, 1119 (9th Cir. 1989) (citing *California v. Trombetta*, 467 U.S. 479 (1984)); *City of Bellevue v. Ohlson,* 60 Wash. App. 485, 493, 803 P.2d 1346 (1991) (police have a duty "to preserve material evidence."); *see also United States v. LaVallee*, 439 F.3d 670, 697 (10th Cir. 2006) (due process principles apply to prison investigators). Also, because the jail staff and -administrators were aware of their legal and constitutional duty to protect inmates in their custody from harm,[3] and knew that Mr. Anderson had been placed in the cell with Mr. Musse without routine screening, they had ample reason to foresee that the incident would result in civil litigation. "[C]ourts have consistently found defendants put on notice by a serious accident or injury occurring on their premises." *Quraishi v. Port Auth. of N.Y. & N.J.*, 2015 WL 3815011, at *5 (S.D.N.Y. June 18, 2015) (citing cases). And in addition to that, because Mr. Musse was in the jail's custody and control, it had a duty to protect him, *Gregoire v. City of Oak Harbor*, 170 Wash. 2d 628, 244 P.3d 924 (2010); and where government has such a special relationship with a victim of crime, the victim has a right to a reasonable investigation. *Cf. Lewis v. Whatcom Cty.*, 136 Wash. App. 450, 457, 149 P.3d 686 (2006) (so holding for victims of child abuse).

[3] See, e.g., Hardy Dep. (Ex. 10) at 57:13-24 (safety "is our purpose").



MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

The first element of spoliation therefore is present here under any standard. King County had much more than "'some notice that the documents were potentially relevant'" to anticipated litigation, *Ski Lifts*, 2020 WL 1492676 *5 (quoting *United States v. Kitsap Physicians Servs*., 314 F.3d 995, 1001 (9th Cir. 2002)), so the "information … should have been preserved," FRCP 37(e)(1). The fact there was no ongoing litigation makes no difference. *Ski Lifts*, 2020 WL at 1492676 *4 and cases there cited; *see also Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) ("The duty to preserve material evidence … extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.")

The record shows King County not only *should have* known the videos might be relevant to future litigation, it *did* know: its administration had referred the case to the "criminal investigations unit" three days after the incident. It also knew that an inmate in its care had been injured by another, seriously enough to be taken to the hospital. Its own policies made clear said that those circumstances required preservation of video records. King County is clearly responsible for the spoliation of this critical evidence.

**2. The destruction of the videos should be presumed to have been intentional.**

The determination of what sanction is appropriate for spoliation of evidence turns in part on the level of the responsible party's culpability.

FRCP 37(e) recognizes two levels of culpability: "fail[ure] to take reasonable steps to preserve" the evidence, and "act[ion] with the intent to deprive another party of the information's use in the litigation." The first level is obviously satisfied here; whether the second is, as well, depends on inferences that can be drawn from the County's misconduct.



MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

"Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Morris v. Union Pac. R.R.,* 373 F.3d 896, 902 (8th Cir. 2004). "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed.'" *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 959 (9th Cir. 2006) (quoting *Kitsap Physicians Serv.,* 314 F.3d at 1001) (court's emphasis)). Here, as shown, the County knew the video was more than "potentially" relevant. Its failure to preserve it insured that "another party"—Mr. Anderson, and Mr. Musse—would be "deprive[d] of the [videos'] … use in … litigation." This is strong circumstantial evidence of intent. "If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y,* 774 F.3d 935, 950 (9th Cir. 2014) (citing Restatement (Second) of Torts § 8A(b) (1965)).

Plaintiff therefore submits that the Court could and should find that the destruction of this evidence qualifies for sanctions under in FRCP 37(e)(2). But as noted above, the Court need not make that finding because it also has the inherent power to sanction destruction of evidence that prejudices an opposing party. Sanctions within the Court's inherent power can be imposed for "conscious disregard" of discovery obligations, which is more than apparent here. Application of this inherent power standard makes sense here because of the unusually severe prejudice the County's actions have caused the plaintiff—while sanctions under FRCP 37(e)(2) require no showing of prejudice at all.



MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

**3. The Court should impose a sanction commensurate with the prejudice caused by the County's destruction of this critical evidence.**

All the applicable rules tailor sanctions for spoliation the harm caused. FRCP 37(e)(1) authorizes "measures no greater than necessary to cure the prejudice." FRCP 37(e)(2) says that, if intentionality is found, the Court can instruct the jury "that it may or must presume the information was unfavorable to the party" or "dismiss the action or enter a default judgment." The Court's inherent power includes a similar range of alternatives:

> First, and least severely, the court, at trial, may instruct the jury that based on a party's destruction of evidence it may draw an inference adverse to that party. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993)…. This type of sanction need not be supported by a finding of bad faith; instead, "simple notice of [the despoiled evidence's] 'potential relevance to the litigation' "will support its imposition." *Glover*, 6 F.3d at 1329.
>
> Second, a court can exclude witness testimony proffered by the party responsible for destroying the evidence and based on the destroyed evidence. *Id.*…
>
> Finally, and most severely, a court may dismiss the claim of the party responsible for destroying the evidence or, where the accused party is a defendant, enter default judgment as to a claim or claims. This ultimate sanction may be imposed only when spoliation is "due to willfulness, bad faith, or fault," and results in unfair prejudice to the opposing party that no lesser sanction can remedy. *In re Exxon Valdez*, 102 F.3d 429, 432–33 (9th Cir.1996).

*Biselli v. Cty. of Ventura*, 2012 WL 2061688, at *2 (C.D. Cal. June 4, 2012).

> "[L]ike many other sanctions, an adverse inference instruction can take many forms, again ranging in degrees of harshness." The degree of harshness should be dictated by the "nature of the spoliating party's conduct—the more egregious the conduct, the more harsh the sanction." "In its most harsh form, when a spoliating party has acted willfully or in bad faith, the jury can be instructed that certain facts are deemed admitted and must be accepted as true. At the next level, when a spoliating party has acted willfully or recklessly, a court may impose a mandatory presumption." At the other end of the spectrum, "the least harsh instruction permits (but does not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party."

*Apple*, 881 F. Supp. 2d at 1150 (quoting *Pension Committee v. Banc of Am. Securities.*, 685 F. Supp. 2d 456, 469 (S.D.N.Y. 2010)). Where the destruction of evidence causes the



MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

opposing party "significant prejudice," "a non-rebuttable inference is appropriate." *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, 2019 WL 2236080 at *17–18 (USDCt. Idaho 5/21/19). "A rebuttable presumption would not be an effective alternative because it would leave [the culpable party] … free to tell its own story, unchecked by the evidence it failed to preserve." *Id*.

**4. Plaintiff has been severely prejudiced by King County's destruction of the video evidence.**

The prejudice to plaintiff from the destruction of this evidence is hard to overstate. "Video recordings … can be uniquely powerful pieces of evidence because they create 'an irrefutable record of what occurred …..'" *State v. Ralston*, 486 P.3d 822, 833 (Ore. App. 2021) (quoting *Floyd v. City of New York*, 959 F. Supp. 2d 668, 685n.65 (S.D.N.Y. 2013)). *See State v. Merriman*, 410 S.W.3d 779, 792-93 (Tenn. 2013) ("A video recording … is unique by its very nature. No evidence comparable to this video recording could have been obtained through other means."). Indeed, video evidence can be conclusive, so powerful that no reasonable jury could fail to find what it depicts to be proven, so summary judgment can be granted on its basis alone. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

As noted above, the events that the videos here captured almost certainly included not only Mr. Anderson's attack on Mr. Musse, but also his behavior just before it and just after he was put in the cell by the jail guards. The evidence that does exist—Mr. Musse's hazy recollection of the attack and an inmate's description of the minutes preceding it—indicates the videos would have shown that the assault was unprovoked, Mr. Musse was asleep, and Mr. Anderson's behavior from the moment he entered the cell made it obvious that he was dangerously mentally ill. That would be near-conclusive proof of liability, that Mr. Musse was an innocent victim and the jail failed to protect him from obvious danger.



MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

As noted above, the videos also would have been graphic, irreplaceable evidence of the pain, shock and emotional distress caused by the horrific attack Mr. Musse suffered, and the length of time it went on. No court sanction could repair the damage caused by the loss of that damage evidence; so any sanction that is imposed will be less than a complete remedy for the harm done to plaintiff's case.

Although no remedy will completely repair the damage done, the Court should reduce it as much as possible. The harm to plaintiffs' liability case can be ameliorated, but only by strong measures that keep the County from denying what the videos likely would have shown: that Mr. Musse was the victim of an unprovoked assault by a person with whom he never should have been confined. Plaintiff believes that can best be done under FRCP 37(e)(2) and the Court's inherent power, by instructing the jury that the County is 100% liable on Mr. Musse's state law negligence claim, and that his injuries resulted from deliberate indifference to his safety by jail employees. Alternatively, under FRCP 37(e)(1) it could simply prohibit the County from offering evidence or argument countering what plaintiff submits on those points. Either way, the County still will be able to argue that its policies and customs were not the cause of Mr. Musse's injuries (see Dkt. 62 at 6), and it will be free to contest Mr. Musse's damage claims.

DATED August 19, 2021.

MacDONALD HOAGUE & BAYLESS

By: */s/ Timothy Ford*
Timothy K. Ford, WSBA #5986
TimF@MHB.com

JAY H. KRULEWITCH, ATTORNEY AT LAW

By: */s/Jay H. Krulewitch*
Jay H. Krulewitch, WSBA #17612

*Attorneys for Plaintiff*



MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

CERTIFICATE OF SERVICE

I certify that on the date noted below I electronically filed this document entitled *MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF participants.

Dated: August 19, 2021

*/s/ Timothy K. Ford*
Timothy K. Ford



MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961