The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| ABDIWALI MUSSE,<br><br>        Plaintiff,<br><br>    v.<br><br>KING COUNTY,<br><br>        Defendant. | No. 2:18-cv-01736-JCC<br><br>PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE |

    King County's Response to Plaintiff's Motion for Sanctions (Dkt. 75) admits that "[t]here were two cameras in the cell where Mr. Musse was assaulted that would have captured much of the incident" but "[v]ideo footage was not retained of this incident." *Id.* at 2. In contrast to its previous submissions, it now says "there is no dispute that [the assault on Mr. Musse] … occurred and was unprovoked"[1] and that Carl Anderson "was prosecuted by King County." *Id.* at 8. However, remarkably, it says nothing at all about the requirement in its own Policy Manual that video evidence must be preserved whenever there is an "injury to staff and/or inmate; criminal behavior; and/or alleged misconduct …." KC Jail Policy 4-01-020, Dkt. 72-4. Only by ignoring that—and refusing to acknowledge that the expected prosecution of Carl Anderson itself constituted "litigation that [was] anticipated, or reasonably foreseeable," Dkt. 75 at 5 (quoting *PacifiCorp v. Nw. Pipeline GP*, 879 F. Supp. 2d 1171, 1188 (D. Or. 2012))—can the County even attempt to argue that it had no duty to preserve this critical evidence.

---

[1] In its Summary Judgement Memo, the County said that Mr. Musse and Mr. Anderson "were fighting" and had to be ordered to stop. Dkt. 43 at 6. In its Answer to the Complaint, the County said there was an "altercation between the Plaintiff and Carl Alan Anderson, and that Anderson was ultimately determined to be the aggressor …." Dkt. 5 ¶3.4

PL'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS - 1
No. 2:18-cv-01736-JCC

M<small>AC</small>D<small>ONALD</small> H<small>OAGUE</small> & B<small>AYLESS</small>
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

18987.00000 oi211101

Neither law nor logic allows those facts to be ignored. They require that King County not be permitted to benefit from this clear violation of its own policy and common law duties. To prevent that, the Motion should be granted and the Court should fashion a sanction for this misconduct that will reduce the prejudice it unavoidably will cause the plaintiff in this case.

**1. King County clearly knew that there was likely to be litigation over this incident.**

The County claims it cannot be charged with spoliation because its agents' "efforts to prepare the case for criminal prosecution" does not demonstrate "knowledge that the video would be relevant to future litigation." Dkt. 75 at 5. It defends this self-contradiction by claiming that "[k]nowledge of potential litigation for spoliation requires more specificity of the litigation." *Id*. None of the cases it cites support that argument.

The County says *Bolding v. Banner Bank*, 2020 WL 2614733 (W.D. Wash. 2020) held that "filing of the complaint triggered notice of the litigation." *Id.* However, the complaint in *Bolding* was not filed until April 2017, and Judge Lasnik held that the defendants' "duty to preserve AWB emails and calendars … arose no later than July 2016 …." *Id.* at 2020 WL 2614733 *3, 5. The County claims that *United States v. Kitsap Physicians Serv.*, 314 F.3d 995 (9th Cir. 2002) stands for the broad proposition that "an internal investigation with review by legal counsel does not impose a duty to preserve" (Dkt. 75 at 5); but the Court in that case pointed out that "the result of this investigation was an opinion from outside legal counsel that there were no bases for fraud." 314 F.3d at 1001. The County is correct that in *Sudre v. Port of Seattle*, 2016 WL 7035062 (W.D. Wash. 2016), Judge Robart held that a report of a slip and fall at the airport did not by itself provide notice of potential litigation; but that was because the airport's initial investigation showed the plaintiff was at fault (for having "walked into a wet area … covered by a cone") and the "attendant had followed proper cleaning and barricading procedures"—and the airport looked for video evidence the day after it was informed of a possible claim. *Id*. at *25-26. *See also id*. at 25 (distinguishing *Stedeford v. Wal-Mart Stores,* 2016 WL 3462132 at *9 (D. Nev. 2016), in which "a customer's report of her injury … for which she intended to seek medical attention made litigation reasonably foreseeable.")

PL'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS - 2
No. 2:18-cv-01736-JCC

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

18987.00000 oi211101

In this case, the County knew from the start that Mr. Musse needed medical attention—its agents took him to Harborview that night. Unlike the defendants in *Kitsap Physicians* and *Sucre*, the County's initial investigation gave it no reason there would be litigation. To the contrary, it knew from the start there would be litigation--litigation against Mr. Anderson that the County itself was preparing. And, of course, the County's jail video policy reflects its awareness that any "injury to staff and/or inmate" or "criminal behavior" is likely to end up in court.

None of the cases the County cites involved such a policy. Neither did any of them involve a defendant that was preparing litigation itself at the time evidence relevant to that litigation was destroyed. The County repeatedly says that spoliation requires notice of "*the* litigation" (Dkt. 75 at 4, 5 [emphasis altered]), and some of its cases do use that definite article in *dicta*, e.g., *Kitsap Physicians*, 314 F.3d at 1001 (9th Cir. 2002), but none of them turn on its use. Neither does the rationale for the rule against spoliation:

> The adverse inference is based on two rationales, one evidentiary and one not. The evidentiary rationale is nothing more than the commonsense observation that a party who has notice that a document is relevant *to litigation* and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document....
>
> The other rationale for the inference has to do with its prophylactic and punitive effects. Allowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial.

*Aiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) (quoting *Nation–Wide Check Corp. v. Forest Hills Distribs.,* 692 F.2d 214, 218 (1st Cir.1982)) (emphasis added)). A rule that required knowledge of the specific litigation that later ensued would make little sense and invite abuse— allowing defendants to argue that evidence they destroyed was not relevant to a specific legal theory or a claim by a particular plaintiff.

Even if the rule against spoliation could be so limited, the County violated it here. The criminal litigation that the County not only anticipated but prepared involved the same event and the interests of the same parties—Mr. Anderson, Mr. Musse, and the County itself—as this litigation. As a crime victim, Mr. Musse had an interest in the prosecution. *See Family of Butts*

PL'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS - 3
No. 2:18-cv-01736-JCC

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

18987.00000 oi211101

*v. Constantine*, 491 P.3d 132, 147 (Wash. 2021) ("crime victims …have significant rights in criminal proceedings …."). That included a right to restitution for his injuries. RCW 9.94A.753. He also had a right to seek civil redress for those injuries from whomever caused them, including both Mr. Anderson and the jail. The County cannot credibly deny it knew these things.

Despite that knowledge, one after another—from the shift Captain to the reviewing Major to the Captain of the Criminal Investigations Unit to the assigned investigator himself—the County's responsible agents did nothing to preserve this critical evidence, as common sense, policy and law required. The County cannot excuse that by claiming ignorance.

**2. No sanction can eliminate the prejudice the County's action has caused plaintiff.**

The County's alternate claim that "Plaintiff cannot demonstrate prejudice" (Dkt. 75 at 8) is mystifying. It admits that its own agent's testimony shows that "the video would have captured the movements and major characteristics of Carl Anderson" and "would have likely shown the assault on Plaintiff" as well. *Id.*[2] But it says this matters little or not at all, because Anderson's behavior and the assault was witnessed by another inmate and "further evidence of plaintiff's demeanor following the assault was noted by Acting Sergeant Gaynor." *Id.*

This blinks reality—the reality that the testimony of any one witness, and especially a jail inmate, can be impeached on cross examination or doubted by jurors; the reality that even an imperfect video depiction of an event is usually more persuasive and informative than the testimony of the most credible witness. It's hard to imagine a more vivid illustration of the latter point than the testimony of Acting Sergeant Gordon Gaynor which the County offers as a substitute for a video of the assault: all Sgt. Gaynor could say was that, after the event, "it just seemed like Carl Anderson was the more aggressive person." Dkt. 76 at 20 of 20. The County's argument that such bland and uninformative testimony is the equivalent of a video of Anderson's crazed behavior and unprovoked assault on Mr. Musse is, frankly, ludicrous.

---

[2] The County tries to downplay the usefulness of the video, saying "[t]here is no indication that facial characteristics would have been captured." Dkt. 75 at 8. That's a substantial exaggeration of the testimony it cites, which was that the video recordings are color and "look[] like television did 10 years ago" although "it's not going to get … every little detail of their face." Dkt. 76 at 12 of 20.

PL'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS - 4
No. 2:18-cv-01736-JCC

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

18987.00000 oi211101

Although the County quotes FRCP 37(c)'s limitations on the spoliation sanctions authorized by the civil rules, it also admits that "courts may impose sanctions for spoliation of evidence as part of their inherent powers," and the exercise of those powers is subject to a separate set of considerations, notably the "'risk of prejudice to the party seeking sanctions.'" Dkt. 75 at 6, 7 (quoting *Leon v. IDX Systems Corp.,* 464 F.3d 951, 958 (9th Cir. 2006)). But the County never acknowledges the true nature and magnitude of that risk. By the County's own (recent) admission, it had a video of Carl Anderson's unprovoked attack on Mr. Musse and his demeanor preceding it. It installed the system that recorded that video and enacted a specific policy requiring such videos to be preserved. That policy shows the County is and was aware that such incidents are likely to result in litigation, and that when they do videos provide the best evidence of what actually occurred. By violating that policy, the County destroyed the most powerful and probative evidence of both liability *and* damages in this case.

The County's Response says nothing about the prejudice to Mr. Musse's damage case. There is nothing it could say. It is indisputable that the video would have been powerful, irreplaceable damage evidence. "The impact of effective use of motion pictures and videotapes can substantially enhance the jury's understanding of the plaintiff's injuries and damages sustained." J. M. Purver, 59 AM. JUR. TRIALS 395, *Presentation and Proof of Damages in Personal Injury Litigation*, § 157 (rev. ed. 2021). Particularly in a battery case, a video can give the jury a unique "foundation for determining the severity of the incident to more accurately calculate damages." *Patel v. Patel*, 2016 WL 3000784, at *6 (E.D. Penn. 2016).[3] "[A]ttempts to quantify pain and suffering damages meet with stiff resistance and skepticism" from jurors, and imagery helps to "provide the jury with information concerning the forces that acted on the client

---

[3] *Accord, e.g.*, *Cazares v. Frugoli*, 2017 WL 4150719, at * 5 (N.D. Ill. 2017) ("the video is relevant to demonstrating Plaintiffs' damages, specifically to show the severity of the crash and shed light on the pain and suffering sustained"); *Jones v. Clark*, 2011 WL 4626036, at *4 (N.D. Ill. 2011) ("the video was probative and relevant to damages"); *Dewick v. Maytag Corp.*, 324 F.Supp.2d 889, 892 (N.D. Ill. 2004) (video and photos relevant "to show the nature and extent of [plaintiff's] injury and … pain and suffering"); *see also Stepanovich v. City of Naples*, 728 Fed.Appx. 891, 900 (11th Cir. 2018) (video admissible to show "the full context of the events" relevant to punitive damages).

PL'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS - 5
No. 2:18-cv-01736-JCC

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

18987.00000 oi211101

and typically … make it easier for the jury to understand the cause of the client's injuries." Purver, 59 AM. JUR. TRIALS § 152. It is not just a truism but true that, because of this, images can be "worth a thousand words" about damages, often more valuable than several witnesses. *Id*. Especially in police cases and other cases involving official misconduct, video can be crucial to "overcoming the bias many jurors have" against plaintiffs. Michael Avery et al, POLICE MISCONDUCT: LAW AND LITIGATION at 887 (3d. ed. 2017). So it is hard to conceive of a sanction that could significantly compensate for the harm to the plaintiff's damage case from the destruction of this evidence in this case.

Despite that, and contrary to what the County says, plaintiff is not asking a "directed verdict" or "terminating sanctions." The sanctions plaintiff's Motion seeks are compensatory, not punitive. They are designed specifically to repair the harm that has been done to the part of his case that can be repaired—his ability to prove that the County knew or should have known of Anderson's dangerous condition. Even if the sanctions plaintiff is suggesting are granted, the County will be able to defend against plaintiff's civil rights claim by rebutting his contention that his injuries were caused by its policies, and it will be able to defend itself against his negligence claim by contesting damages. In the latter effort, the County will continue to benefit from plaintiff's inability to present this critical evidence on damages, even if some partial remedy for that loss can be fashioned. So necessarily, what plaintiff is requesting is not a complete remedy; but anything less would give inadequate weight to the risk—on this record, the certainty–of prejudice to his case that the County's multiple violations of its preservation duties have caused.

DATED this 24th day of September, 2021.

MacDONALD HOAGUE & BAYLESS
By: */s/ Timothy K. Ford*
    Timothy K. Ford, WSBA #5986
    Tiffany C. Cartwright, WSBA # 43564

JAY H. KRULEWITCH, ATTORNEY AT LAW
By: */s/Jay H. Krulewitch*
    Jay H. Krulewitch, WSBA #17612
*Attorneys for Plaintiff*

PL'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS - 6
No. 2:18-cv-01736-JCC

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

18987.00000 oi211101

CERTIFICATE OF SERVICE

I certify that on the date noted below I electronically filed this document entitled *Plaintiff's Reply In Support of Motion for Sanctions for Spoliation of Evidence* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF participants.

Dated:  September 24, 2021

*/s/ Tim Ford*
Tim Ford, WSBA #5986

PL'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS - 7
No. 2:18-cv-01736-JCC

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

18987.00000 oi211101