THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABDIWALI MUSSE,<br><br>  Plaintiff,<br><br>  v.<br><br>KING COUNTY, *et al.*,<br><br>  Defendants. | CASE NO. C18-1736-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff's motion for sanctions for spoliation of evidence (Dkt. No. 71). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion in part and DENIES it in part for the reasons explained below.

## I. BACKGROUND

Plaintiff Abdiwali Musse sued in December 2018 to recover for injuries he suffered when Carl Anderson assaulted him in the King County Correctional Facility on November 1, 2015. His theory of liability is that, by housing Anderson alongside other inmates rather than segregating him, King County violated an affirmative duty to protect him from detainees with known aggressive behavior. (*See, e.g.*, Dkt. No. 1-2 at 7.) Musse's case thus depends on proving that the County had some reason to know that Anderson should not be housed with other inmates. (*See,*

1  *e.g.*, Dkt. No. 43 at 17 (the County arguing that "there is no evidence that . . . officials had any reason to believe that Anderson would attack Musse").) Musse asserts that Anderson's behavior upon arriving in the bunk unit where the attack happened, and continuing up until the attack, made it apparent that Anderson was dangerous. (Dkt. No. 71 at 4.)

Musse seeks sanctions based on the County's failure to preserve video footage of the attack. At the time of the attack, there were two security cameras in the jail bunk unit where it occurred. (Dkt. No. 72-7 at 5.) All indications are that these cameras were working properly at the time and would have captured the incident from start to finish. (Dkt. Nos. 72-7 at 5–7, 72-9 at 6.) The resulting footage would be silent and "look[] like television did 10 years ago . . . It's not that good . . . But clear enough to see what's going on." (Dkt. No. 76 at 60.)

Under the County's record-retention policy, security camera footage is destroyed on a 60-day rolling basis, such that Day 61 overwrites Day 1, and so on. (Dkt. Nos. 72-3 at 5, 76 at 10.) However, in the event of any "[i]ncident which requires a preliminary investigation . . . injury to staff and/or inmate; [or] criminal behavior," that same policy requires that "the Shift Captain will export any videotape of the incident to the archived video file." (Dkt. No. 72-4 at 3.) The County's witnesses acknowledged in their depositions that the footage would have been useful in Anderson's later criminal prosecution; they also acknowledged that, under the County's record-retention policy, the video should have been preserved. (Dkt. Nos. 72-8 at 3, 4, 72-11 at 4.) However, Shift Captain Jerry Hardy could not remember doing anything to secure the scene of the attack and admitted failing to follow policy to preserve the video. (Dkt. No. 72-10 at 3–4.) The County offers no explanation for why it did not follow its own record-retention policy.

The County's investigator did not photograph Musse's injuries, interview any inmates who witnessed the attack, or ask jail staff whether there was photo or video evidence. (Dkt. No. 72-12 at 3–4, 5, 7.)

//

//

ORDER
C18-1736-JCC
PAGE - 2

## II. DISCUSSION

**A.  Legal Standard**

District courts have two sources of authority to impose sanctions for spoliation: "the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and . . . sanctions under Rule 37 against a party who fails to obey an order to provide or permit discovery." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

Federal Rule of Civil Procedure Rule 37(e) authorizes the Court to address a party's failure to preserve evidence by (1) ordering measures to the extent necessary to cure prejudice; or, (2) if a party acted "with intent to deprive another party of the information's use in the litigation," (A) presuming the lost information was unfavorable to the destroying party; (B) instructing the jury that it may or must presume this was the case; or (C) imposing terminating sanctions, i.e., judgment against the offending party.

A party alleging spoliation must prove (1) that the allegedly spoliating party had a duty to preserve what was destroyed; (2) that party destroyed the information with a "culpable" mental state; and (3) the lost evidence was relevant to, and would support, the moving party's claim or defense. *Ski Lifts, Inc. v. Schaeffer Mfr.*, 2020 WL 1492676, slip op. at 4 (W.D. Wash. 2020) (citing *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976. 989 (N.D. Cal. 2012)).

Footage of Musse's assault was unquestionably relevant. The only issues are whether the County had a duty to preserve it, whether it acted culpably by failing to do so, and, if so, what the appropriate sanction is.

**B.  Duty to Preserve Evidence**

The obligation to preserve relevant evidence attaches when litigation is "pending or reasonably foreseeable." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y.2003). This duty "may arise even before litigation is formally commenced." *Apple Inc.*, 888 F. Supp. 2d at 990. "[T]rial courts in this Circuit generally agree that, '[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should

know is relevant to the action.'" *Id.* (citing *In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060 at 1067 (N.D. Cal. 2006)).

The parties dispute whether that means that *this* lawsuit had to have been foreseeable, or whether preservation duties attach as long as *some* litigation was reasonably foreseeable. Musse takes the latter position. (Dkt. No. 77 at 3.) The County argues that specific knowledge of a particular future litigation is required. (Dkt. No. 75 at 5.) The Court "respectfully rejects the notion that a party's obligation to preserve information arises only after it understands the *precise* nature of the *specific* litigation at issue." *Zbylski v. Douglas Cty Sch. Dist.*, 154 F. Supp. 3d 1146, 1163 (D. Colo. 2015) (emphasis original).

The U.S. District Court for the Eastern District of Pennsylvania addressed this question in a case involving similar facts. *See Bistrian v. Levi*, 448 F. Supp. 3d 454 (E.D. Pa. 2020). Bistrian sued the United States for failing to protect him from assault by Taylor, another inmate, while in pretrial detention. *Id.* at 463. The detention center had cameras that would have captured key parts of the attack and preceding events, but the footage was no longer available. *Id.* at 463–64. In assessing whether preservation duties had attached, the court explained:

> In the spoliation case law, certain kinds of incidents are viewed as being especially likely to lead to litigation. Incidents in which inmates are injured in prison are one such category: A number of courts have found that government defendants reasonably should have anticipated litigation from the time an inmate was seriously injured or died in custody. . . . That is not to say that the mere fact of . . . a prison assault is always enough to put defendants on notice of potential litigation and trigger a duty to preserve. But such an event combined with other circumstances may often be enough that defendants should reasonably anticipate litigation beginning soon after the incident itself.
> What kinds of other circumstances? For one thing, the seriousness of the injury is a factor, as more serious injuries naturally are more likely to lead to litigation. So is the parties' prior relationship. A defendant who has already been sued by a litigious acquaintance may more reasonably be expected to anticipate a future lawsuit. Both parties' conduct after the event can also shed light on whether the defendant reasonably should have anticipated the litigation. A plaintiff's statements or conduct might put a defendant on notice that litigation was likely. Similarly, a defendant's decision to open an investigation can indicate that it was reasonable to expect a lawsuit.

*Bistrian*, 448 F. Supp. 3d at 469–70 (citations omitted). Applying this framework, the court held that "the United States reasonably should have anticipated litigation soon after the . . . attack and certainly before the video was overwritten three to four weeks later. This kind of incident—an inmate-on-inmate attack in prison—commonly leads to civil litigation." *Id.* at 471. The court also stated that the criminal prosecution of Bistrian's attacker triggered a preservation duty. *Id.* at 472 (citing *Ungar v. City of New York*, 329 F.R.D. 8, 14 n.2 (E.D.N.Y. 2018) ("Where it is foreseeable that evidence may be relevant to a criminal proceeding, the State's failure to preserve it can support an adverse inference instruction in a civil proceeding arising out of the same events.")).

Here, there are multiple circumstances from which the County should have reasonably foreseen litigation: Musse suffered a broken eye socket, dental injuries, and traumatic brain injury for which he was sent to the hospital. (*See e.g.*, Dkt. No. 72-8 at 3 (Commander Clark: "Those are significant injuries.").) Moreover, the *Hammer* case discussed in this Court's summary judgment order demonstrates that the County is aware of lawsuits arising from inmate-on-inmate violence. (*See* Dkt. No. 62 at 7 (explaining that the *Hammer* consent decree requires King County to "develop and maintain a procedure to track inmates with violate histories within KCCF to ensure . . . appropriate initial housing assignments based on the risks they present.").) The County also opened an investigation. (Dkt. Nos. 72-12, 76 at 1.) Moreover, by the time the County overwrote the footage of this incident, not only should it have reasonably foreseen litigation, but it actually *did* foresee litigation: a criminal prosecution against Anderson.

The County argues that, despite that prosecution, it had no reason to anticipate *this* lawsuit, filed nearly three years after the assault. This logic is superficially appealing, but it crumbles when held up to the timeline: The County deleted the video footage in January 2016 and charged Anderson criminally in March 2016. (Dkt. No. 76 at 1–2.) Anderson was not convicted until October 2018—several months after Musse submitted a notice of his tort claim against the Country. (Dkt. Nos. 75 at 1, 5, 76 at 1–2.) The County cannot claim that it simply put

the Musse-Anderson matter out of its head only to be blindsided by Musse's lawsuit years later, when in fact the County was still involved in ongoing criminal litigation over that very incident. Thus, the Court finds that the County had a duty to preserve the footage before its destruction in January 2016.

**C.    Culpable Mental State**

A litigant has a "culpable state of mind" for spoliation purposes if "the evidence was destroyed knowingly, even without intent to breach a duty to preserve it, or negligently." *Ski Lifts*, 2020 WL 1492676, slip op. at 4 (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002)) (cleaned up).

The County does not squarely address whether it acted culpably. Instead, it asserts that no spoliation occurs if a litigant destroys evidence "according to its [retention] policy or in the normal course of its business." (Dkt. No. 75 at 4 (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001–02 (9th Cir. 2002).) This argument ignores reality. It overwrote footage of the assault not "according to" its record-retention policy, but in *spite* of it. The County's witnesses concede that the policy required the video to be preserved. (Dkt. Nos. 72-8 at 3–5, 72-9 at 4, 72-11 at 4.) And the on-duty shift commander admits he did not attempt to archive the video. (Dkt. No. 72-10 at 3–4.) The County gives no explanation for why it did not follow its own policy.

Document retention policies are valuable only insofar as organizations adhere to them. It is no explanation to say, as the County does, that evidence was erased under a recordkeeping policy if the policy required that evidence to be preserved. The Court finds that the County acted culpably and committed spoliation.

**D.    Appropriate Sanction**

In determining the appropriate sanction, courts consider (1) the degree of fault of the spoliating party, (2) the prejudice to the innocent party, and (3) whether a lesser sanction would be sufficient to cure the prejudice. *See Apple Inc.*, 888 F. Supp. 2d at 992.

The County's fault is significant. It apparently knew what its retention policy required, did not follow the policy, and does not try to explain why. Its seemingly cursory follow-up investigation (Dkt. No. 72-12 at 3–4, 5, 7) is also concerning. Whether one calls this "willful," "intentional," or "conscious disregard," it is enough to put Rule 37(e)(2) sanctions in play. *See EEOC v. Fry's Elecs., Inc.*, 874 F. Supp. 2d 1042, 1045–47 (W.D. Wash. 2012) (finding that defendant "wi[l]lfully destroyed hard drives on which relevant documents were admittedly created" where the defendant "offers no justification or explanation for their destruction"); *Apple Inc.*, 888 F. Supp. 2d at 998 ("In the Ninth Circuit, a party may be entitled to an adverse inference instruction based on spoliation even in the absence of a finding of bad faith," only "conscious disregard" is required).

The prejudice to Musse is severe. Video recordings are powerful evidence, with far higher fidelity than testimony played from the reel of an eyewitness's memory. The County's assertion that Musse cannot show prejudice (Dkt. No. 75 at 8), is unpersuasive. The other available evidence—eyewitness testimony from an inmate, and curt statements from the County's own employees—is not a serviceable substitute. Moreover, the missing footage was especially valuable because it would have shown not just the attack, but also Anderson's behavior after arriving at the bunk unit up until the assault—key evidence for Musse's theory that the County should have known not to put Anderson with other detainees.

The last question is the severity of the sanction. Musse asks for "the most severe [sanction] the law allows," (Dkt. No. 71 at 6), i.e., a directed verdict on his negligence claim and on the issue of whether his injuries resulted from the deliberate indifference of jail personnel. That goes too far. As the County points out, the missing footage was silent and of middling quality. Moreover, even if that footage depicted precisely what Musse asserts, a jury might still decide against him. At the same time, imposing no sanction, as the County urges, would not address the prejudice to Musse. A permissive adverse inference instruction is sufficient to cure this prejudice. That would "deny the wrongdoer the fruits of its misconduct yet not interfere with

ORDER
C18-1736-JCC
PAGE - 7

that party's right to produce other relevant evidence." *In re Oracle Corp. Securities Litig.*, 627 F.3d 376, 386–87 (9th Cir. 2010).

The jury will be instructed as follows regarding the video footage:

> There was security camera footage of Carl Anderson's attack on Plaintiff. The County failed to preserve this footage for Plaintiff's use in this litigation after its duty to preserve it arose. You may assume that, had the County preserved the video, the footage would have shown Carl Anderson acting aggressively and erratically immediately upon arriving in the bunk unit until the point he attacked Plaintiff without provocation. You may further assume that the footage would have tended to corroborate Plaintiff's evidence and to undermine any contrary evidence. Whether this information is important to you in reaching your verdict is for you to decide.[1]

### III.   CONCLUSION

For the foregoing reasons, Musse's motion for sanctions based on spoliation (Dkt. No. 71) is GRANTED in part and DENIED in part.

DATED this 8th day of October 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[1] The Court may revisit the content and wording of this instruction, if appropriate, as trial progresses.